UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|                          |   |                    |
|--------------------------|---|--------------------|
|                          | : |                    |
|                          | : |                    |
| IN RE: PETER D. HIRSCHL  | : | CIVIL ACTION       |
|                          | : | NO. 3:02 GP 5 (SRU)|
|                          | : |                    |
|                          | : |                    |
|                          | : | APRIL 27, 2005     |

**ANSWER AND REPLY OF RESPONDENT PETER D. HIRSCHL
TO AMENDED PRESENTMENT**

By Way of Answer:

1.      Paragraph 1 is admitted.

2.      Paragraph 2 is admitted.

3.      Paragraph 3 is admitted.

4.      Paragraph 4 is admitted.

5.      Paragraph 5 is admitted.

By Way of Reply:

1.      Having performed the sentence of confinement, paid the imposed fine and

performed the required community service, which sentence was set forth in the

judgment in of the United States District Court for the District of Connecticut (Exhibit A),

respondent was reinstated as a member of the bar of the State of Connecticut as of

January 2005, pursuant to a decision of the Superior Court which provided *inter alia*:

> Viewing the totality of the circumstances and balancing the factors
> set forth in the ABA guidelines, it is ordered that Hirschl be suspended
> from the practice of law in Connecticut until January 1, 2005.  If he has
> met all the conditions of his sentence he may be readmitted without
> application and without having to take the bar related courses or
> examinations requested by the petitioner.

(Exhibit B)

2.     Under date of June 29, 2004, the following order was entered at a Term of

the Appellate Division of the Supreme Court held in and for the First Judicial

Department in the County of New York on July 29, 2004:

> And Zeldes, Needle & Cooper, P.C., by David P. Friedman, Esq., attorneys for respondent having moved on February 17, 2004 for an order of this Court imposing upon respondent reciprocal discipline as was imposed upon him by the Superior Court for the Judicial District of Hartford in the State of Connecticut,
>
> And the Departmental Disciplinary Committee, by Raymond Vallejo, of counsel, having submitted an affirmation in reply <u>requesting that respondent be suspended from the practice of law until January 1, 2005</u>,
>
> Now, upon reading and filing the papers with respect to the motion, and due deliberation having been had thereon, and upon the Opinion Per Curiam filed herein, it is unanimously,
>
> Ordered that the motion is granted to the extent of continuing respondent's suspension until such time as his probation has been concluded, and until further order of this Court, with respondent to be automatically reinstated to the practice of law in the State of New York upon submission of proof of both the termination of probation and his reinstatement in Connecticut.

(Exhibit C) (Emphasis added).

WHEREFORE, for the reasons set forth by the Superior Court decision of May

20, 2003, for the reasons set forth in accompanying Respondent Hirschl's Memorandum

and in the interest of justice, respondent moves in accordance with Local Rule 83.2(f)

that his suspension from the practice of law before this Court be terminated and he be admitted as a member of the bar of this Court at this time.


Jacob D. Zeldes (ct04351)


Zeldes, Needle & Cooper, P.C.
1000 Lafayette Blvd., Suite 500
Bridgeport, CT 06604
Tel: (203) 333-9441
Fax: (203) 333-1489
e-mail: jzeldes@znclaw.com

Attorneys for Peter D. Hirschl

# EXHIBIT A

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

### JUDGMENT IN A CRIMINAL CASE

UNITED STATES OF AMERICA

v.

Peter D. Hirschl
33 Arnoldale Road
West Hartford, CT 06119
SSN: 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    DOB: 08/20/56

CASE NO. 3:99CR00207(AVC)

Nora R. Dannahy , Assistant U.S. Attorney

Jacob D. Zeldes
Defendant's Attorney

The defendant pled guilty to count one. Accordingly, the defendant is adjudged guilty of count one, which involves the following offense:

Title & Section: **18 U.S.C. § 1956(h)**          Count: **one**
Nature of Offense: **Conspiracy to Engage in Monetary Transaction in Criminally Derived Property**
Date Offense Concluded: **05/99**

The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

The defendant is hereby ordered committed to the custody of the United States Attorney General or his duly authorized representative to be imprisoned for a term of: **five (5) months** with the recommendation that the defendant serve this term in a halfway house; to be followed by a term of **five (5) months** of home confinement with a voice verification monitoring system. After completing the term of home confinement, the defendant shall serve a **three (3) year** term of supervised release. Special Conditions of Supervised Release include: (1) that the defendant pay all costs of home confinement including the cost of the voice verification monitoring; (2) that the defendant shall perform two hundred (200) hours of community service within the first year of his supervised release; (3) that the defendant shall pay a fine of $15,000.00 during the first year of his supervised release; and (4) that the mandatory drug testing requirements of supervised release are waived. The defendant shall voluntarily surrender to the U.S. Marshal for this district on **October 30, 2002**, or at such other time and place as designated by the Bureau of Prisons.

It is further ordered that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs and special assessments imposed by this judgment are fully paid. In addition to the special conditions of supervised release imposed above, it is hereby Ordered that the general conditions of supervised release set out on the reverse side be imposed.

It is ordered that the defendant shall pay a Special Assessment of **$100.00,** for count one which shall be due immediately.

September 23, 2002
Date of Imposition of Sentence

Alfred V. Covello, Chief United States District Judge
Date: **September 24, 2002**

CERTIFIED AS A TRUE COPY
ON THIS DATE 9-24-02
Kevin F. Rowe, Clerk
BY:
Deputy Clerk

MICROFILM

SEP 2 4 2002

HARTFORD

# EXHIBIT B

NO. CV 01-0812540                    :    SUPERIOR COURT

STATEWIDE GRIEVANCE COMMITTEE :    J.D. OF HARTFORD

VS.                                  :    AT HARTFORD

PETER D. HIRSCHL                     :    MAY 20, 2003

### MEMORANDUM OF DECISION

The respondent, Peter D. Hirschl, was suspended from the practice of law by this court on January 16, 2002, pursuant to an application for reciprocal discipline arising out of his suspension in New York state.  This case was continued until April 23, 2003 when Hirschl appeared at a hearing on a two count presentment asking that appropriate discipline be imposed by the court.

Count one requests the imposition of discipline, pursuant to Practice Book § 2-25, because Hirschl did not notify the statewide grievance committee of disciplinary action taken against him by the Supreme Court of New York.  The court finds that this failure was the unintentional result of ignorance of the rule and count one is accordingly dismissed.

Count two requests appropriate discipline with respect to Hirschl's criminal conviction for conspiracy to launder money.

SUPERIOR COURT
OFFICE OF THE CLERK

MAY 20  '23  3:11

The facts are undisputed.

On September 23, 1999, Hirschl pleaded guilty to violation of title 18 U.S.C. § 1956(h), conspiracy to money launder, in the United States District Court for the District of Connecticut. As a result of this plea he faced maximum penalties of ten years imprisonment, a fine of $250,000 and supervised release of up to three years. Additionally, the court could order restitution, the forfeiture of the property involved in the conspiracy, amounting to $230,000 and a special assessment of $100.

As part of the plea, Hirschl admitted that he, Paul Silvester and Christopher Stack knowingly and willfully entered into an unlawful agreement and conspiracy to engage in and did, in fact, engage in monetary transactions involving criminally derived property which had a value of over $10,000.

From July, 1997 to January 6, 1999, Silvester, Hirschl's brother-in-law, was treasurer of the state of Connecticut and sole fiduciary for the state's pension fund. During that period, Silvester accepted a portion of the monies that Stack received as a consultant or placement agent on certain private equity funds in which the state of Connecticut pension fund had invested. In

return for these payments, Silvester improperly directed two private equity consulting agreements to Stack.

There was no evidence that Hirschl was aware of this arrangement.

In approximately November of 1998, Hirschl and Silvester agreed that Stack would retain Hirschl to purportedly provide legal services. In fact, no material legal services were to be provided and it was agreed that the money paid by Stack to Hirschl would be for the benefit of and transferred to Silvester. There is no evidence that Hirschl was to benefit financially from this conspiracy.

On approximately December 31, 1998, Hirschl sent a letter to Stack in which he stated that he was to charge him $450 an hour and requested a $100,000 retention payment.

The hourly rate that was set forth in that agreement greatly exceeded the normal hourly rate Hirschl charged and was disguised in order to explain the substantial amount of money received from Stack, which ultimately totaled $230,000.

Hirschl sent no bills or work product to Stack. He, at the direction of Silvester, placed the money in various bank accounts

3

and purchased Connecticut tax free bonds.  Hirschl was aware that
the $230,000 received from Stack was criminally derived property,
but did not know the nature of the specific unlawful activity
involved, namely the corrupt solicitation and acceptance of cash
payments by Silvester intended to influence him in connection
with the business of the Connecticut treasurer's office.

Hirschl was sentenced on September 23, 2002.  Between the
time of his guilty plea on September 23, 1999, and the date of
his sentencing, Hirschl did not practice law.

Hirschl was sentenced to serve five months of incarceration
in a halfway house to be followed by five months of home
confinement.  The court imposed a term of supervised release of
three years and required Hirschl to pay the costs of home
confinement, including the cost of the voice monitoring
verification equipment.  During the first years of his supervised
release, Hirschl is required to perform 200 hours of community
service and pay a fine of $15,000 and a special assessment of
$100.

The terms of the sentence resulted in part from a plea
bargain and downward departures from the federal sentencing

4

guidelines.  The court, (Covello, J.) considered Hirschl's past acts of charity and kindness, community and civic activities, family circumstances, and the totality of the circumstances. Hirschl had no past trouble with the law, and he did not intend to nor did he benefit from the criminal activities.

The petitioner argues that Hirschl should be suspended from the practice of law for three years and ten months from the date of sentencing, which would be the completion of his sentence. The petitioner avers that an attorney serving a sentence can neither vote nor serve as a juror on a state court proceeding and should not be deemed an attorney in good standing during that period.

Hirschl claims that his suspension should end on September 10, 2003, when the period of his home confinement ends.  He points out that there was a long period (three years) between his guilty plea and the sentencing during which time he did not practice law.

Both sides direct the court to the American Bar Association (ABA) standards for imposing lawyer sanctions.  Although not formally adopted in Connecticut, our courts consistently rely on

5

them as a guide for determining appropriate disciplinary

sanctions.   <u>Statewide Grievance Committee v. Spirer</u>, 247 Conn.

762, 782 (1999); <u>Statewide Grievance Committee v. Shluger</u>, 230

Conn. 673 n.10 (1994).

This court finds that the following aggravating factors set

forth in the ABA standards apply in the instant case:  (i)

substantial experience in the practice of law (since 1995); (k)

engaging in illegal conduct as reflected in his guilty plea; (c)

a pattern of misconduct as he accepted money improperly from

Stack on two occasions and issued a false retainer letter calling

for a retainer fee in excess of his standard fee; and (h)

vulnerability of the victim, since this is a crime against the

community which would be difficult to discover.  This court finds

that the following aggravating factors do not apply: (a) prior

disciplinary offenses; (b) dishonest or selfish motive (he acted

to benefit a relative whom he perceived to be in need rather than

himself); (d) multiple offenses; (e) bad faith obstruction of the

disciplinary proceeding by intentionally failing to comply with

rules or orders of the disciplinary agency; (f) submission of

false evidence; (g) refusal to acknowledge wrongful nature of the

conduct; and (j) indifference to making restitution.

This court finds that the following mitigating factors as set forth in the ABA guidelines apply: (a) absence of a prior disciplinary record; (b) absence of a dishonest or selfish motive; (d) timely good faith effort to make restitution or to rectify the consequences of misconduct; (e) free and full disclosure to disciplinary board; (g) his good character and reputation; (k) imposition of other penalties or sanctions; and (l) remorse.

I have reviewed the presentence report prepared for the sentencing judge, Hon. Alfred V. Covello, Chief Judge, United States District Court for the District of Connecticut. Like Judge Covello, I am very favorably impressed with the large number of testimonial letters written on Hirschl's behalf. These letters are from persons in all walks of life and speak from personal experience of Hirschl's commitment to the community, charities and individuals. These activities have been longstanding and were not calculated to gain recognition or acclaim. None were undertaken for recognition at sentencing or this presentment.

7

Viewing the totality of the circumstances and balancing the factors set forth in the ABA guidelines, it is ordered that Hirschl be suspended from the practice of law in Connecticut until January 1, 2005.  If he has met all the conditions of his sentence he may be readmitted without application and without having to take the bar related courses or examinations requested by the petitioner.

John. J. Langenbach
Superior Court Judge
5/20/03

8

# EXHIBIT C

At a Term of the Appellate Division of the Supreme
Court held in and for the First Judicial Department
in the County of New York on July 29, 2004.

PRESENT:  Hon.  John T. Buckley,          Presiding Justice,
                Eugene Nardelli
                Peter Tom
                Alfred D. Lerner
                David Friedman,           Justices.

FILED

JUL 2 9 2004

Appellate Division, Supreme Court
First Department

----------------------------------------x

In the Matter of Peter D. Hirschl
(admitted as Peter David Hirschl),
a suspended attorney:                              M-220

        Departmental Disciplinary Committee
        for the First Judicial Department,

                Petitioner,

        Peter D. Hirschl,

                Respondent.

----------------------------------------x

        An order of this Court having been entered on February 8,
2001, inter alia, suspending respondent (who, as Peter David
Hirschl, was admitted to practice as an attorney and counselor-
at-law in the State of New York at a Term of the Appellate
Division of the Supreme Court for the First Judicial Department
on July 26, 1982), from the practice of law in the State of New
York pursuant to 22 NYCRR 603.12 and Judiciary Law § 90 (4)(d),
predicated upon a finding that respondent's entry of a plea of
guilty to the crime of conspiracy to Money Launder in violation
of 18 USC 1956(h) and 18 USC 1957, a federal felony, in the
United States District Court of Connecticut on September 23, 1999
did constitute a "serious crime" and directing that respondent
show cause before a Referee appointed by the Court, pursuant to
22 NYCRR 603.12(a), why a final order of censure, suspension or
disbarment should not be made (M-6439),

        And Zeldes, Needle & Cooper, P.C., by David P. Friedman,
Esq., attorneys for respondent having moved on February 17, 2004
for an order of this Court imposing upon respondent reciprocal
discipline as was imposed upon him by the Superior Court for the
Judicial District of Hartford in the State of Connecticut,

(M-220)                            -2-                        July 29, 2004

    And the Departmental Disciplinary Committee, by Raymond
Vallejo, of counsel, having submitted an affirmation in reply
requesting that respondent be suspended from the practice of law
until January 1, 2005,

    Now, upon reading and filing the papers with respect to the
motion, and due deliberation having been had thereon, and upon
the Opinion Per Curiam filed herein, it is unanimously,

    Ordered that the motion is granted to the extent of
continuing respondent's suspension until such time as his
probation has been concluded, and until further order of this
Court, with respondent to be automatically reinstated to the
practice of law in the State of New York upon submission of proof
of both the termination of probation and his reinstatement in
Connecticut.


                    ENTER:

                                    **DEPUTY CLERK**
                                    CLERK.


              APPELLATE DIVISION SUPREME COURT FIRST DEPARTMENT
                            STATE OF NEW YORK

I, CATHERINE O'HAGAN WOLFE, Clerk of the Appellate Division of the Supreme
Court First Judicial Department, do hereby certify that I have compared this copy with
the original thereof filed in said office on ____7/29/04____ and that the same is
a correct transcript thereof, and of the whole of said original.
IN WITNESS WHEREOF I have hereunto set my hand and affixed the seal of this Court
on ___7/29/04___

                    Catherine O'Hagan Wolfe
                                        **CLERK**

SUPREME COURT, APPELLATE DIVISION

JUL 29 2004

First Judicial Department, February 2004

Hon.    John T. Buckley,              Presiding Justice,
        Eugene Nardelli
        Peter Tom
        Alfred D. Lerner
        David Friedman,               Justices.


-----------------------------------------x

In the Matter of Peter D. Hirschl
(admitted as Peter David Hirschl),
a suspended attorney:
                                              M-220

      Departmental Disciplinary Committee
      for the First Judicial Department,

              Petitioner,

      Peter D. Hirschl,

              Respondent.

-----------------------------------------x

Disciplinary proceedings instituted by the Departmental
    Disciplinary Committee for the First Judicial
    Department.  Respondent, as Peter David Hirschl, was
    admitted to the Bar of the State of New York at a
    Term of the Appellate Division of the Supreme Court
    for the First Judicial Department on July 26, 1982.

    Thomas J. Cahill, Chief Counsel, Departmental
    Disciplinary Committee, New York
    (Raymond Vallejo, of counsel) for petitioner.

    Zeldes, Needle & Cooper, P.C., by
    David P. Friedman, Esq., for respondent.

M-220 -- February 17, 2004

**IN THE MATTER OF PETER D. HIRSCHL, A SUSPENDED ATTORNEY**

**PER CURIAM**

    Respondent Peter D. Hirschl was admitted to the practice of law in the State of New York by the First Judicial Department on July 26, 1982 as Peter David Hirschl. At all times relevant to these proceedings, respondent maintained an office for the practice of law in Hartford, Connecticut, where he was also admitted to practice.

    On or about September 23, 1999, respondent entered a guilty plea in the United States District Court for the District of Connecticut to one count of conspiring to engage in a monetary transaction in criminally derived property in violation of 18 USC §§ 1956(h) and 1957 (conspiracy to launder money). The conviction stemmed from respondent's involvement in a conspiracy to launder $230,000 received from a third party. Respondent conceded his awareness that the money was criminally derived. However, at his plea allocution, respondent averred his lack of knowledge that the unlawful activity involved the corrupt solicitation and acceptance of cash payments by his brother-in-law, Peter Silvester, which payments were intended to influence Silvester's performance in his capacity as Treasurer of the State of Connecticut.

    In a previous order, the crime for which respondent stands

convicted was deemed to be a "serious crime" under Judiciary Law § 90(4)(d). Respondent was suspended from the practice of law and directed to show cause before the Departmental Disciplinary Committee why a final order of censure, suspension or disbarment should not be made. Thereafter, on September 23, 2002, respondent was sentenced in connection with his Connecticut conviction to five months imprisonment, five months home confinement, three years supervised release, 200 hours community service and a $15,000 fine. We subsequently granted an interim application for an extension of the sanction hearing until 90 days from the date of respondent's release from prison/home confinement.

On January 16, 2002, the Superior Court for the Judicial District of Hartford suspended respondent from the practice of law in Connecticut pursuant to an application for reciprocal discipline arising out of this Court's order of suspension. Similarly, by an order entered October 11, 2002, the United States District Court for the District of Connecticut suspended respondent until final disposition of the disciplinary proceedings.

In a decision dated May 20, 2003, the Superior Court of Connecticut ordered that respondent be suspended from the practice of law in Connecticut until January 1, 2005 based upon his criminal conviction for conspiracy to launder money. During

3

allocution, the court noted, respondent had admitted that he, his
brother-in-law, Paul Silvester, and Christopher Stack knowingly
and willfully entered into an unlawful agreement and conspiracy
to engage in, and did actually engage in, monetary transactions
involving criminally derived property, which had a value of over
$10,000.  From July 1997 to January 6, 1999, Silvester had been
the Treasurer of the State of Connecticut and the sole fiduciary
of the state's pension fund.  During this period, Silvester
accepted a portion of the sum that Stack had received as a
consultant to certain private equity funds, in which the pension
fund had invested.  In return for these payments, Silvester
improperly directed two private equity consulting agreements to
Stack.  However, there was no evidence that respondent was aware
of this arrangement.

    The court also found that, in approximately November 1998,
respondent and Silvester agreed that Stack would retain
respondent's legal services.  However, no material legal services
were to be provided, and it was agreed that the money Stack paid
to respondent would be transferred to Silvester for his benefit.
While there was no evidence that respondent derived any financial
benefit from this conspiracy, on or about December 31, 1998,
respondent sent a letter to Stack stating a fee of $450 an hour
and requesting a $100,000 retention payment.  This unusually high
hourly rate was intended to disguise the large sums received from

4

Stack, which ultimately totaled $230,000. Respondent sent neither bills nor work product to Stack and, at the direction of Silvester, deposited the money into various bank accounts and purchased Connecticut tax free bonds for Silvester's account. Although respondent was aware that the money received from Stack was criminally derived property, he did not know the nature of the specific unlawful activity, namely the corrupt solicitation and acceptance of cash payments by Silvester intended to influence him in the discharge of his official duties.

The Connecticut court directed that respondent be suspended from the practice of law until January 1, 2005. As mitigating circumstances, the court noted that for the three-year period between the date respondent pled guilty, September 23, 1999, to the date he was sentenced, September 23, 2002, he did not practice law. The court also noted the sentencing court's consideration of respondent's acts of charity, his civic activities, family circumstances, lack of a criminal record, and the absence of intended or actual benefit derived from the criminal activities. In aggravation, the court found, among other things, that respondent had engaged in a pattern of misconduct by accepting improper payments from Stack on two occasions and issuing a false retainer letter setting an hourly rate in excess of his standard fee. The Connecticut court concluded:

> Viewing the totality of the circumstances and
> balancing the factors set forth in the ABA
> guidelines, it is ordered that Hirschl be
> suspended from the practice of law in
> Connecticut until January 1, 2005.  If he has
> met all the conditions of his sentence he may
> be readmitted without application and without
> having to take the bar related courses or
> examinations requested by the petitioner.

Respondent now seeks an order imposing the same discipline as was imposed by the Superior Court for the Judicial District of Hartford and directing that he may be reinstated as an attorney in New York State upon being re-admitted to the practice of law in Connecticut under the same conditions set forth in the May 20, 2003 decision of the Connecticut court.  Respondent's counsel states that respondent has completed his sentence of confinement, his community service and paid the fine, and that his period of supervised release is due to expire in September 2006.

Counsel has also submitted a memorandum in support of reciprocal discipline in accordance with <u>Matter of McAuliffe</u> (308 AD2d 253 [2003]), noting that the federal court departed downward from the applicable guidelines when imposing sentence; that sentencing was delayed until three years after respondent pled guilty primarily because of the death of his attorney and the lack of a prompt sentencing request by either party; and that the public will be safeguarded if respondent were to be reinstated in New York upon his reinstatement in Connecticut in view of the oversight exercised by the Connecticut court.  The memorandum

6

further emphasizes that respondent received no monetary gain,
that he was unaware of the corrupt agreement between Silvester
and Stack and that his involvement was an uncharacteristic
departure from an otherwise responsible life.  Character
testimonials are attached to the memorandum, and respondent has
expressed his remorse for his lack of judgment.

In reply, the Committee consents to respondent's application
stating that, in light of the findings, the recommendation and
the order of the Connecticut court, the record is sufficient for
a determination of an appropriate sanction and, therefore, there
is no need for a further hearing on this matter.  In support the
Committee similarly relies on <u>Matter of McAuliffe</u> (308 AD2d at
255), which, in lieu of ordering a hearing based on the
attorney's "serious crime" conviction, directed a sanction of
public censure similar to that imposed against the respondent in
New Jersey.  The Committee asserts that since most if not all of
respondent's law practice was conducted in Connecticut and that
state has the greater interest, it is appropriate to impose an
equivalent sanction (<u>Matter of Lillard</u>, 255 AD2d 88 [1999]).  As
to reinstatement, the Committee maintains that this Court may
similarly order that respondent be reinstated upon submission of
proof of his reinstatement in Connecticut (<u>Matter of Coughlin</u>,
218 AD2d 194 [1996] [two-year suspension coterminous with
Massachusetts suspension directing automatic reinstatement upon

proof of reinstatement in that state]).  In a subsequent letter,
the Committee notes that this Court has generally declined to
permit a lawyer convicted of a felony and serving criminal
probation to practice law (see Matter of Greenberg, 212 AD2d 310
[1995]; Matter of Smith, 208 AD2d 290 [1995]).  Thus, while
agreeing that the record permits the determination of an
appropriate sanction, it defers to this Court to impose whatever
sanction it deems just, fair and reasonable.

Since a hearing is likely to result in the imposition of a
sanction similar to that meted out by the Connecticut court (see
Matter of Lida, 211 AD2d 255 [1995][attorney convicted of 16
counts of money laundering suspended for three years]), the
record is sufficient to make an appropriate sanction
determination.  As the Committee points out, it has been this
Court's long-standing policy to preclude the practice of law by
an attorney who is on probation (e.g. Matter of Lida, 211 AD2d at
257; Matter of Lowell, 88 AD2d 128 [1982]).

Accordingly, respondent's motion should be granted to the
extent of continuing respondent's suspension until such time as

his probation has concluded, and until the further order of this
Court, with respondent to be automatically reinstated to the
practice of law in the State of New York upon submission of proof
of both the termination of probation and his reinstatement in
Connecticut.

All concur.

Order filed.

## CERTIFICATION

This is to certify that a copy of the foregoing has been sent via U.S. First Class

Mail, postage prepaid, on this date, to:

Hugh F. Murray, Esq.
Murtha Cullina LLP
185 Asylum Street
Hartford, CT 06103-3469

Dated at Bridgeport, Connecticut on this 27th day of April, 2005.

Jacob D. Zeldes
Jacob D. Zeldes