UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| IN RE: PETER D. HIRSCHL | : : : : : : : : | CIVIL ACTION<br>NO. 3:02 GP 5 (SRU)<br><br>APRIL 27, 2004 |

**RESPONDENT PETER D. HIRSCHL'S MEMORANDUM IN SUPPORT OF HIS RE-ADMISSION TO THE BAR OF THIS COURT**

Nature of the Proceeding

Former Chief Judge Covello of the United States District Court for the District of Connecticut had this to say about respondent Peter D. Hirschl and his criminal offense – the offense which brings Mr. Hirschl before this Court with the hope he receives the identical discipline he has already received by the Connecticut Superior Court:

> …the totality of the circumstances may, in fact, warrant a downward departure here, and the Court concludes that that's, in fact, the circumstance here.
>
> Without significantly reviewing all of the materials that you have submitted to the Court, the record can certainly reflect that, up until this day, this gentleman has not been in any serious trouble with the law; two, he didn't intend to receive, and, in fact, never did receive anything for [from] the criminal conduct for which he has pled guilty, and, to certain extent, he was unaware of the specifics of the corrupt agreement between Mr. Silvester and Mr. Stack.
>
> Further, sir, you are apparently -- I don't know you -- but you apparently are a very special person to this community. And, I note, among other things here, that for years you have been giving things to the West Hartford Public Library, whether it be children's tables and chairs, and toy storage cabinets, computers, printers, and so forth, and

you have just done this through your own individual financial generosity.

I noticed also…that you bought a man a set of teeth because he couldn't, because he needed new teeth and couldn't afford to pay for them. And, you wait on tables down at the Loaves and Fishes Restaurant in order to promote that charitable organization.

There's even a letter in here from the former mayor of the city, in which Mayor Peters says that you are a contributing member of society, that you've dedicated your time, experience and commitment to the city of Hartford, and that you have given tremendously of your own time through civic and charitable organizations.

And, also in here is a letter from a Connecticut Superior Court judge, who doesn't even identify himself as one, which I thought was particularly unique. And, having said all of that, a terrible thing has happened here, and this has been an enormous tragedy for many people, and it seems that everybody that it has touched has been injured, including you and the members of your family.

What we seek here is that under Local Rule 83.2(f), there is no just reason not to allow Mr. Hirschl to again be member of the bar of this Court.

The federal conviction, the judgment for which is annexed to respondent's Answer and Reply to Amended Presentment (Exhibit A) was imposed on September 23, 2002. Contrary to the usual federal court procedure, there was a considerable delay in imposing sentence. The imposition of sentence was three years to the date -- September 23, 1999 – after respondent pled guilty to the federal offense.

The reasons for the lengthy delay -- primarily the death of respondent's initial counsel and the lack of a prompt sentencing request by either defense or government counsel -- is significant for the present proceedings because:

- Shortly after the widespread publicity of the scandal surrounding the State Treasurer's Office in August, 1999 and at least by the time he was

charged in September, 1999, Mr. Hirschl voluntarily ceased practicing law in this Court and elsewhere;

- On February 8, 2001, Mr. Hirschl was temporarily suspended from the practice of law in New York State;

- On January 16, 2002, Mr. Hirschl was suspended from the practice of law by this Court; and

- On October 9, 2002, Mr. Hirschl was suspended from practice before the U.S. District Court for the District of Connecticut.

- On May 20, 2003, the Superior Court entered its decision holding that Mr. Hirschl would be reinstated as of January, 2005, as a member of the bar by the State of Connecticut, having by then completed his 5-months term of imprisonment, his 5-months period of home confinement, his community service and the payment the $1,500.00 fine (Exhibit B).

- On July 29, 2004 the New York Court ruling on respondent Hirschl's request to be re-admitted stated:

    Ordered that the motion is granted to the extent of continuing respondent's suspension until such time as his probation has been concluded, and until further order of this Court, with respondent to be automatically reinstated to the practice of law in the State of New York upon submission of proof of both the termination of probation and his reinstatement in Connecticut.

    The judgment and opinions of the New York Court are annexed as Exhibit C to the Answer and Reply to Amended Presentment.

- As of January, 2005 Mr. Hirschl has been reinstated as a member of the bar by the State of Connecticut.

3

What we seek here is re-admission to this bar as the State of Connecticut has re-admitted Mr. Hirschl to the bar of the State of Connecticut.

By this memorandum we make these points:

1.Although there is a tendency to suspend lawyers from the practice of law while on probation or supervised release, there are significant mitigating factors in view of the circumstances of this case which suggest that the Connecticut ruling (Exhibit B) should be followed rather than the New York ruling (Exhibit C) which has deferred re-admission until the completion of the supervised release period in 2006.

2.The American Bar Association Standards for Imposing Lawyer Sanctions, consistently relied on by the courts and the absence of any reasons to apply the "unless" provisions of Local Rule 83.2(f) suggest that no additional suspension by this Court is appropriate.

For these reasons, the public would be amply safeguarded if Mr. Hirschl were reinstated at this time, as has Connecticut.

I.ALTHOUGH THERE IS A TENDENCY TO SUSPEND LAWYERS FROM THE PRACTICE OF LAW WHILE ON PROBATION OR SUPERVISED RELEASE, THERE ARE SIGNIFICANT MITIGATING FACTORS IN VIEW OF THE CIRCUMSTANCES OF THIS CASE WHICH SUGGEST THAT THE CONNECTICUT RULING (EXHIBIT B) SHOULD BE FOLLOWED RATHER THAN THE NEW YORK RULING (EXHIBIT C) WHICH HAS DEFERRED RE-ADMISSION UNTIL THE COMPLETION OF THE SUPERVISED RELEASE PERIOD IN 2006.

Respondent Hirschl is well aware that frequently courts order suspension from the practice of law for the period the lawyer is on probation or supervised release as has the State of New York (Exhibit C). However, the decision by Judge Langenbach of the Superior Court, attached to respondent Hirschl's Answer and Reply (Exhibit B)

thoroughly reviewing the standards, is ample authority to grant re-admission to Mr. Hirschl as of now.

While there may be reason to keep some lawyers under suspension during the period of probation, there is no such reason here: the extraordinary amount of time that has elapsed with Mr. Hirschl not practicing, the nature of his conduct in the conspiracy clearly recognized by Judge Covello, and the ruling of the Superior Court justify affording Mr. Hirschl the same treatment as did the Superior Court.

The nature of Mr. Hirschl's conduct in the crime for which he was convicted is significant. For the first time in his life, Peter Hirschl, at age 46, stood before a federal criminal court for sentencing, upon his plea of guilty to a charge of conspiracy – an offense for which the Government, with commendable candor, recognized:

- It was never intended by Mr. Hirschl or others that Mr. Hirschl would receive any monetary gain from his conduct;

- Mr. Hirschl, in fact, received no monetary gain, but returned all funds involved to the government;

- Mr. Hirschl was unaware of the "corrupt agreement" between the State Treasurer (Mr. Hirschl's brother-in-law) and Christopher Stack (the uncharged, co-conspirator), regarding the Treasurer's direction of "two equity consulting agreements" from which Mr. Stack was a benefactor; and

- Mr. Hirschl – obviously unlike others involved – was not "aware of the ongoing arrangement" between the Treasurer and Stack.

As the Government in the criminal case advised Judge Covello at the time Mr. Hirschl and others plead guilty, although Mr. Hirschl was aware the money he

5

received from the unindicted co-conspirator Christopher Stack was "criminally derived", Mr. Hirschl "was not aware of the specified unlawful activity."  That specified unlawful activity of which he <u>was unaware</u>, but which did in fact occur, was the former State Treasurer's solicitation of payments from co-conspirator Stack to influence the Treasurer in connection with the business of the Treasurer's office and Stack's payments for receipt of the business.

    The unawareness of the specified unlawful activity puts Mr. Hirschl in a unique position among the conspirators referred to in the related criminal actions.  At the time of the acceptance of the guilty pleas on September 23, 1999, the Government pointed out that the former Treasurer (Paul J. Silvester), his brother (Mark Silvester) and the unindicted co-conspirator (Stack) – all except Mr. Hirschl – were aware of the specified unlawful activity.  The Treasurer sought and accepted payments because of his position.  The Treasurer's brother, Mark Silvester, as the Government said, <u>inter alia</u>, collected "cash from Christopher Stack" and with his brother decided to use a portion of the cash to cover some of Paul Silvester's personal expenses.  The uncharged co-conspirator Stack was the recipient of fees from the investment funds "directed improperly…to Christopher Stack."

    Mr. Hirschl stands in a unique position among the others mentioned because he was the only one who never expected to receive any financial benefit and who never did receive any such benefit.  The agreement between Mr. Hirschl and Paul Silvester included a provision that the money involved would be transferred to Mr. Silvester "at some undetermined future date."  Mark Silvester used some of the funds from one identified by the Government as "associate A" for the purchase of a "Donzi power boat,

and had certain personal services, painting at his home, and expenses relating to the boat covered."  The Treasurer, Paul Silvester, indirectly received campaign payments from Stack and at least $46,000 directly from Stack, as well as promises of employment positions for himself and others.  And as for Mr. Stack, he received so-called "finders fees" – without any real "finding" of anything and in amounts anticipated to be far greater than Mr. Hirschl received as an anticipated conduit.  Stack was "a consultant or placement agent on private equity investments" and made the kickbacks for the benefit of the Treasurer and, to a lesser degree, the Treasurer's brother.

II.   THE AMERICAN BAR ASSOCIATION STANDARDS FOR IMPOSING LAWYER SANCTIONS, CONSISTENTLY RELIED ON BY THE COURTS AND THE ABSENCE OF ANY REASONS TO APPLY THE "UNLESS" PROVISIONS OF LOCAL RULE 83.2(F) SUGGEST THAT NO ADDITIONAL SUSPENSION BY THIS COURT IS APPROPRIATE.

Though not formally adopted in Connecticut, the state courts of Connecticut consistently rely on the American Bar Association's <u>Standards for Imposing Lawyer Sanctions</u> (hereinafter, "<u>Standards</u>") as a guide.  Judge Langenbach found them very convincing after an evidential hearing.  His decision (Exhibit B) more than offsets the New York Court's rejection of its own Grievance Counsel's position.

Mr. Hirschl's involvement in the Silvester-Stack conspiracy was an uncharacteristic departure from an otherwise responsible, law-abiding life, as evidenced by the many character letters submitted in the federal court.  Mr. Hirschl's criminal conduct was wholly inconsistent with his good character and stands in stark contrast to his more familiar roles as a hard-working, talented lawyer, a loving husband and father, and a contributing, involved member of his community.  A sampling of the letters

7

submitted to the federal criminal case and the Connecticut disciplinary action substantiates that:

- Wrote Philip A. Schonberger of Albemarle Equities, L.L.C.:

> I spend a good deal of my non-business time raising funds or soliciting interest for a variety of local nonprofit causes, many in the cultural arena. There is no one in Hartford more willing to understand and support the most difficult, and even obscure, fund raising emergencies which befall many of our local nonprofits.

- Wrote Carol Gabrielson Fine, chair of volunteers at Beth Israel:

> As chair of volunteers, I recruit members to prepare and serve lunches to the poor and homeless. I first met Peter at House of Bread where he worked not only with my group but often with others who needed help. He was always responsible for being there when needed and helped us with his positive outlook. He and his wife continue to come to Loaves and Fishes where he works efficiently with good humor and enthusiasm.

- Wrote Attorney Brian Doyle:

> Over the years, I have found Peter not only to be a bright but skillful attorney. More important than those attributes is the fact that I have found Peter Hirschl to be a good father and husband to his wife and three children…Peter is also generous to a fault with his money at times. His involvement on the Board of Directors for Real Artways has changed the face of that non-profit organization. Additionally, Peter has been generous to the West Hartford Public Library and numerous other non-profit organizations.

- Wrote Will K. Wilkins, Executive Director of Real Art Ways, a non-profit contemporary arts center:

> The janitor and jack of all trades for this building, Louis Floyd, is a kind and giving man who donates his time when he isn't working to a number of worthy causes in the area, and gets involved in helping those less fortunate. But Louis, though in his thirties, had had problems with his teeth, and had lost several of them, causing him to smile less and become self-conscious. Peter had Louis go to his own dentist, and Louis received new teeth, the cost picked up by Peter.

- Wrote Professor Nicholas L. Georgakopoulos of the University of

Connecticut School of Law:

> The greater Hartford area is lucky to have had Peter. His generosity is everywhere. Not only did he give computers to the Library, not only did he help build Real Art Ways, but he has also helped most other major charitable organizations in the area. Taking Peter out of Hartford will clearly be Hartford's loss…
>
> On our way back from Greece, Peter painstakingly added the value of the gifts he had bought and reported it to Customs with all the appropriate disclosures. He did not bring any Cuban cigars nor did he smoke any in Greece. This makes Peter more law-abiding than many travelers who relish the opportunity of violating laws they may consider petty or wrong.
>
> Peter's law-abiding nature was also apparent in the couple of instances that I had required legal representation. I had asked Peter for a reference but instead he wanted to help me himself with no fee. He often would make disclosures to me that he was legally required to make. My impression of Peter is that he is a deeply law-abiding person. I am sure that he even has fewer traffic violations than average – definitely fewer than I have.

- Wrote Carol H. Waxman, Children's Services Librarian of the West

Hartford Public Library Children's Division:

> Peter Hirschl is a man who gives so much of himself for others to receive happiness and pleasure. The children who visit the West Hartford Public Library have benefited greatly from his generous heart. I have told Peter often that his late parents would have been so proud to know that he was giving back to the community in this way. He would always tear up with I said this and I know that losing his young parents within months of each other hand a profound effect on this man.
>
> Peter Hirschl's devotion to his wife and children is boundless. With the birth of each new Hirschl child Peter would proudly visit the library to share with us his newfound joy. We celebrated with him and knew that we would see Peter's family here often. Peter delights in his children and their devotion to him is strong. Any absence by Peter would create great sadness and extreme mourning in his family. He is a loyal, loving and supportive father and husband. He needs to be with his loved ones every day.

- Wrote Dr. Christopher J. Wakem:

9

> Peter is an honest and caring human being.  His role as a lawyer has always reflected one of concern for those who are in trouble and who often have little.  He is a worthy advocate for the less fortunate people to whom he gives caring and superb advice.  Peter is a person who gives not only his ideas and time, but also his financial support, e. g., to artistic endeavors.  He has been a major supporter and donor to the Real Artways group and has helped them foster a style of arts, cinema, and music, which Hartford would otherwise be without.  He is truly civic-minded.  He has involved himself in Connecticut politics.  As a lawyer, he is committed, aggressive, but fair.

- Wrote William M. McBride, owner of used, rare and out-of-date book shop:

> I know Peter Hirschl as a friend, a customer of our bookshop, and as lawyer for my business and my family for many years.
>
> No action of his in any of these roles ever called into question his honesty, intelligence or moral fiber.  In fact, his efforts as our lawyer were such that we came to rely on him in matters both sensitive and critical to our business and private lives.  In every instance, his performance was reliable, complete and timely and resolved every matter to everyone's satisfaction, both ours and those with whom we needed to deal within the framework of the law.

Moreover, additional letters furnished while he was serving the initial portion of his sentence confirm that Mr. Hirschl continued his role as a good citizen.

- Wrote Bill Hosley, Director of The Antiquarian and Landmarks Society:

> To Whom It May Concern:  Peter Hirschl has been employed during the past five months at the Antiquarian & Landmarks Society.  During that time he has overseen the cataloguing and organization of a collection of archival material related to three of the nine historic properties owned and operated by the Society.
>
> Peter has been a joyful presence whose dedication, responsibility, collegiality and intelligence have benefited the organization in many ways.  He is punctual, hard working and conscientious.  Despite the circumstances of his employment and the fact that he was learning the assignment on the job, he took to it with the zeal and enthusiasm of a natural trained archivist.

- Wrote Will Wilkins, Executive Director of Real Art Way:

10

> To Whom It May Concern: This letter is to affirm that Peter D. Hirschl, in his 5 months of employment at Real Art Ways, a 27 year old non-profit arts organization, has been reliable, punctual, and trustworthy.
>
> Mr. Hirschl has contributed in a variety of ways to our work, from assisting behind the scenes in the office, to working on events. He has been responsive to instruction, sensitive to his fellow workers, and, all in all, a valuable addition to our staff.
>
> We have trusted Mr. Hirschl with responsibilities, and he has rewarded our trust in every instance.

The conduct at issue in this case involved an aberrational act. As the federal Presentence Report concluded, "Mr. Hirschl is highly unlikely to engage in criminal conduct in the future and is expected to excel under supervision."

## Conclusion

At the criminal sentencing of one of the other conspirators in the Treasurer's scandal, the Government specifically "mentioned greed, money, power and politics" as "the motivating factors." Such comments, as the record in the federal case makes clear, have no application to Peter Hirschl. While the financial benefit of the conspiracy to co-conspirator Christopher Stack was estimated at $1,593,000, the contemplated benefit to Mr. Hirschl was zero. This lack of greed and Mr. Hirschl's well-recognized morality, coupled with the Federal Probation Officer's recognition that Mr. Hirschl is "highly unlikely" to violate the law again have achieved the goal of this Court to see that the "administration of justice may be safeguarded and the public protected from those who are licensed to perform the important functions of the legal profession." Doe v. Statewide Grievance Committee, 240 Conn. at 684. Under Local Rule 83.2(f) there is no just reason to defer re-admission. The Government, which had sought

imprisonment in the criminal case, takes no position with regard to Mr. Hirschl's pending readmission request.

    For all these reasons, then, Respondent Peter D. Hirschl urges this Court to impose the identical period of suspension as did the Superior Court for the State of Connecticut and re-admit Mr. Hirschl as of this time as an attorney authorized to practice law at the bar before this Court.

Respectfully submitted,

_____/s/
Jacob D. Zeldes (ct04351)

Zeldes, Needle & Cooper, P.C.
1000 Lafayette Blvd., Suite 500
Bridgeport, CT 06604
Tel: (203) 333-9441
Fax: (203) 333-1489
e-mail: jzeldes@znclaw.com

Attorneys for Peter D. Hirschl

## CERTIFICATION

This is to certify that a copy of the foregoing has been sent via U.S. First Class Mail, postage prepaid, on this date, to:

Hugh F. Murray, Esq.
Murtha Cullina LLP
185 Asylum Street
Hartford, CT 06103-3469

Dated at Bridgeport, Connecticut on this 27th day of April, 2005.

_____/s/
Jacob D. Zeldes